**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

MISSION PRIMARY CARE CLINIC, PLLC                                    PLAINTIFF


VERSUS                                    CIVIL ACTION NO. 5:07cv162-DCB-JMR


DIRECTOR, INTERNAL REVENUE SERVICE,
VICKSBURG PRIMARY CARE TEAM, INC., and
MARKUS B. STANLEY                                    DEFENDANTS


## OPINION AND ORDER

This matter comes before the Court on Markus B. Stanley's and Vicksburg Primary Care Team, Inc.'s Motion to Dismiss a Party [docket entry no. 57] and the United States' and Mission Primary Care Clinic, PLLC's Cross-Motions for Summary Judgment [docket entry nos. 65, 67] as to the counterclaim filed by the United States. Having carefully considered said Motions, memoranda in support and opposition thereof, all applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. BACKGROUND AND PROCEDURAL HISTORY

Mission Primary Care Clinic, PLLC ("Mission") is a professional limited liability company organized under the laws of Mississippi and engaged in the business of providing medical care services. One of Mission's functions is to collect fees for services provided by its members and to remit the same, less

operating expenses, to said members.  At all times relevant to this action, Markus B. Stanley was a physician licensed by the state of Mississippi.  Stanley was also the president and sole shareholder in Vicksburg Primary Care Team, Inc. ("VPCT"), a Mississippi Subchapter S-Corporation.

On March 19, 2007, the Internal Revenue Service[1] ("IRS") issued a Notice of Levy of Wages, Salary, and Other Income ("Notice of Levy") to Mission as against Stanley, the taxpayer named therein.  Mission was served with the Notice of Levy on March 23, 2007, but did not remit any money to the IRS.  Instead, Mission continued to periodically distribute funds to VPCT and/or to Stanley.  Specifically, on or after March 23, 2007[2], when the levy was served, Mission issued the following checks from its account with Bancorp South, each made payable to "Mark Stanley DO":

| Check Number | Amount | Date |
| --- | --- | --- |

[1] As noted in the Court's previous orders in this case, according to the United States' Answer and Counterclaim [docket entry no. 6], the Director of the IRS was improperly named as an original defendant in this cause and the United States was the real party in interest.  While the Court still believes such information to be accurate, except as where otherwise noted it will continue to refer to the United States by the appellation of its relevant agency, the IRS, so as to minimize confusion and enhance the readability of this Opinion & Order.

[2] Mission made one payment to Stanley on March 23, 2007, in the amount of $2,000.00.  It is not clear from the record whether this amount was paid before or after Mission was served with the Notice of Levy.  The Court addresses this issue in the last section of this Opinion & Order.

| Check No. 10205 | $2,000.00 | March 23, 2007 |
|---|---|---|
| Check No. 10210 | $1,000.00 | March 30, 2007 |
| Check No. 10224 | $9,100.00 | April 5, 2007 |
| Check No. 10225 | $3,000.00 | April 5, 2007 |
| Check No. 10229 | $5,000.00 | April 10, 2007 |
| Check No. 10234 | $5,600.00 | April 20, 2007 |
| Check No. 10293 | $1,000.00 | April 24, 2007 |
| Check No. 10304 | $9,000.00 | May 2, 2007 |
| Check No. 10306 | $7,500.00 | May 4, 2007 |

(Mission's Supplemental Brief ex. A.)  Each of these checks was endorsed by Stanley and either cashed or deposited into Stanley's personal bank account.  (Mission's Supplemental Brief ex. A.)

After remitting these payments of varying amounts to Stanley and making one payment of $6,012.50 to VPCT based upon a Statement of Exemption and Filing Status provided by Stanley, Mission filed its Complaint for Interpleader [docket entry no. 1] on August 17, 2007, invoking this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  In its Complaint filed against the IRS, VPCT, and Stanley, Mission avers that, contrary to Stanley's position that he is entitled to payment[3], the IRS "has continuously demanded

---

[3]    On June 1, 2007, Stanley sent a letter to the IRS in which he claimed that a substantial portion of the income purportedly levied by the Notice of Levy was exempt from levy under the Internal Revenue Code.  On June 15, 2007, Stanley sent a letter to Mission asserting several objections and defenses to the levy and demanding payment of all funds due him from Mission for services rendered after March 19, 2007.  In particular, Stanley posited that, absent additional notices of levy, Mission could not rightfully withhold money owed to him for services rendered post-

that plaintiff deliver to the [IRS] all distributions to which [VPCT] and/or [Stanley] would have been entitled since the date of said levy based on the medical services provided by [Stanley], less exemptions allowed by law and as approved by the IRS." (Compl. ¶ 10.) Thus, while admitting that it had no interest in the interpleaded funds, Mission sought to avoid the liability it might incur if it paid the wrong party the balance which was currently being held for distribution or any funds which may have become available for distribution in the future. (Compl. ¶ 12.)

Stanley and VPCT filed their Answer and Defenses [docket entry no. 5] on October 17, 2007. On October 19, 2007, the IRS filed its Answer [docket entry no. 6] and, invoking this Court's subject matter jurisdiction pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402(a), asserted a counterclaim against Mission. The IRS's counterclaim posits that, pursuant to 26 U.S.C. § 6332(d)(1), Mission is liable to the IRS for its purported failure to honor the Notice of Levy. The IRS contends that Mission owes the IRS for payments Mission made to Stanley and/or VPCT after Mission received the Notice of Levy. On November 8, 2007, Mission filed an Answer [docket entry no. 8] to the IRS's counterclaim and asserts a claim against Stanley and VPCT for indemnity. Stanley and VPCT submitted an Answer [docket entry no. 9] to Mission's indemnity claim on November 28, 2007.

---

March 19, 2007.

4

When it first instituted the counterclaim, the IRS sought to recover a total of $63,012.50 from Mission. After further investigation of the case, the IRS discovered that some of the distributions made to Stanley in March 2007 were made before the service of the Notice of Levy, making them exempt from the claim under the continuing levy. Additionally, the IRS concedes that Stanley was entitled to an exemption in the amount of $6,012.50. Considering these recalculations, the IRS now seeks to recover $43,200.00, plus prejudgment and postjudgment interest thereon, from Mission. (IRS's Mot. for Summ. J. at 1, n. 1.)

On December 21, 2007, Mission filed a Motion to Voluntarily Dismiss Complaint for Interpleader[4] and a Motion for Summary Judgment[5] on the IRS's counterclaim. Later, on September 16, 2008, VPCT and Stanley filed their Motion to Dismiss a Party, seeking dismissal of both VPCT and Stanley from the IRS's counterclaim against Mission. Responses in opposition to VPCT's and Stanley's Motion to Dismiss were filed by Mission on September 25, 2008, and the United States on September 30, 2008. Stanley and VPCT filed a Rebuttal Memorandum on October 6, 2008.

---

[4] This Court granted Mission's Motion to Voluntarily Dismiss Complaint for Interpleader by its Order [docket entry no. 44] of April 10, 2008. The remaining claims in this action are the IRS's counterclaim against Mission and Mission's indemnity claim against VPCT and Stanley.

[5] The Court denied Mission's Motion for Summary Judgment on the IRS's Counterclaim by its Order [docket entry no. 48] of July 17, 2008.

On October 15, 2008, Mission and the IRS filed cross-motions for summary judgment on the IRS's counterclaim. VPCT and Stanley filed a response to each of these motions on November 14, 2008. The IRS filed its response in opposition to Mission's motion for summary judgment on November 14, 2008. On the same day, Mission filed its response in opposition of the IRS's motion for summary judgment.

Stanley's and VPCT's Motion to Dismiss a Party and the IRS's and Mission's Cross-Motions for Summary Judgment as to the Counterclaim now are before the Court.

## II. Stanley's and VPCT's Motion to Dismiss

In their motion to dismiss, Stanley and VPCT ask the Court to dismiss them from the IRS's counterclaim pursuant to Federal Rules of Civil Procedure 20 and 21. Both Mission and the IRS filed memoranda in opposition to Stanley's and VPCT's requests. Interestingly, although Stanley's and VPCT's motion seeks dismissal only from the counterclaim, both Mission and the IRS address the merits of dismissing Stanley and VPCT from the case entirely. In their rebuttal memoranda, Stanley and VPCT clarify that they do not seek dismissal from the claim pending against them by Mission; rather, they seek dismissal <u>only</u> from the counterclaim. The Court has reviewed the language of the IRS's counterclaim and notes that it is brought only against Mission; neither Stanley nor VPCT are named as defendants in the counterclaim. Accordingly, Stanley's

and VPCT's motion to dismiss them from the IRS's counterclaim is denied as moot. Stanley and VPCT remain as defendants only in the indemnity claim brought against them by Mission. If the Court is overlooking claims set forth in the pleadings which have been provided or if the Court is missing other pleadings, the parties are invited to so inform the Court.

### III.  IRS's and Mission's Cross-Motions for Summary Judgment as to the Counterclaim

*A. Summary Judgment Standard*

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).[6] The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a

---

[6]  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).

properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, "[t]he mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 252. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### B. Review of Applicable Law

The Court provided an overview of the applicable statutory law in its earlier-issued order in this case; however, in the interest of a complete opinion, it reviews the same law here. Pursuant to 26 U.S.C. § 6331(a), "[i]f any person liable to pay any tax neglects or refuses to pay the same ... it shall be lawful for the

Secretary to collect such tax ... by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax."  Generally, a levy served on an entity applies "only to property possessed and obligations existing at the time thereof."  26 U.S.C. § 6331(b). However, a statutory exception exists; pursuant to § 6331(e), "[t]he effect of a levy on salary or wages payable to or received by a taxpayer shall be continuous from the date such levy is first made until such levy is released under section 6343."  It is for noncompliance with this "continuing levy" that the IRS seeks to hold Mission liable.

Section 6331(e) does not define "wages or salary".  However, the Secretary of the Treasury, pursuant to his power under 26 U.S.C. § 7805(a)[7], promulgated the following regulation:

> A levy on salary or wages has continuous effect from the time the levy originally is made until the levy is released pursuant to section 6343.  For this purpose, the term salary or wages includes compensation for services paid in the form of fees, commissions, bonuses, and

---

[7]     26 U.S.C. § 7805(a) reads:

> Except where such authority is expressly given by this title to any person other than an officer or employee of the Treasury Department, the Secretary shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue.

similar items. The levy attaches to both salary or wages earned but not yet paid at the time of the levy, advances on salary or wages made subsequent to the date of the levy, and salary or wages earned and becoming payable subsequent to the date of the levy, until the levy is released pursuant to section 6343.

26 C.F.R. § 301.6331-1(b)(1).

When an entity is served with a Notice of Levy, it is under a specific duty to comply with that levy. 26 U.S.C. § 6332 addresses those responsibilities:

Except as otherwise provided in this section, any person in possession (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

This statute has been interpreted to provide two defenses to an entity who fails to comply with a levy: (1) that the entity is not liable because it was not in possession of the taxpayer's property that was subject to the levy and (2) that the entity is not liable because the property was subject to a prior judicial attachment or execution. See United States v. National Bank of Commerce, 472 U.S. 713 (1985). It is clear that the second defense is not applicable in this case; therefore, the Court considers only the first defense.

*C. Review of this Court's Prior Ruling on Mission's First Motion for Summary Judgment*

In Mission's first motion for summary judgment, filed on December 21, 2007, Mission asserted (1) that it was not indebted to Stanley at the time it was served with the notice of levy and (2) that Stanley was not an employee to whom it paid a wage or salary, but rather was an owner of a professional limited liability company ("PLLC") who received profits based on the amounts he produced. Based on those arguments, it was Mission's position that it could not be liable for failing to comply with either the one-time levy or a continuing levy. In response, the IRS argued that, because Stanley was compensated on the basis of the revenue he produced for Mission, Stanley should be treated as an employee or an independent contractor. Specifically, the IRS sought to categorize the payments to Stanley as "compensation for services paid in the form of fees", a category of "salary or wages" as defined by 26 C.F.R. § 301.6331(b)(1).

Since the Court found that Mission was not liable to the IRS with respect to any of Stanley's property on the date Mission was served with the Notice of Levy, it reasoned that Mission's only potential liability could come under 28 U.S.C. § 6331(e), which allows for a levy to be continuous as to a taxpayer's wages and salary from the date the Notice of Levy is served until such levy is released by the IRS. The Court then properly narrowed the dispositive issue in the case to the following: "[W]ere the payments that Mission made to Stanley and/or VPCT after March 23,

2007, 'wages or salary payable to or received by' Stanley?"
_Mission Primary Care Clinic, PLLC v. Director, I.R.S._, 2008 WL
2789504 (S.D. Miss. July 17, 2008).  If the distributions paid by
Mission did not qualify as wages and/or salary or were not paid to
Stanley, then Mission would not be liable to the IRS; however, if
such payments did constitute wages and/or salary subject to the
continuing levy and were paid to Stanley, Mission would be liable
to the IRS for any of Stanley's property that it did not turn over
pursuant to the levy.

In answering the dispositive question, the Court considered
persuasive the Fourth Circuit Court of Appeals' decision in _United
States v. Jefferson-Pilot Life Ins. Co._, 49 F.3d 1020, 1022-23 (4th
Cir. 1995).   In that case, the IRS argued that payments of
commissions to an independent contractor constituted wages or
salary that were subject to a continuing levy.  _Id_.  The court,
after reviewing both the broad language and the legislative history
of Section 6331(e), accepted the IRS's interpretation of the
statute.   Ultimately, the  _Jefferson-Pilot_  court  held  that
commissions due to an independent contractor could be categorized
as "wages or salary" subject to a continuing levy pursuant to §
6331(e).  _Id_.

This Court found _Jefferson-Pilot_ to be sufficiently analogous
to guide its own ruling on Mission's motion for summary judgment.
Specifically, the Court reasoned that, if the language of § 6331(e)

was broad enough to encompass commissions paid to an independent contractor, then it would also be broad enough to include compensation paid to an independent contractor for services rendered paid in the form of fees. In the end, however, the Court denied Mission's motion for summary judgment because there existed a genuine issue of material fact as to whether Stanley's role within Mission was that of an employee, independent contractor or member.

## D. The New Issues

Since this Court's finding that a genuine issue of material fact remained as to whether Stanley was an independent contractor of Mission, the IRS seemingly has changed its argument. Now, in its own motion for summary judgment on the counterclaim, the IRS focuses on a footnote in this Court's prior opinion which reads:

> Section 301.6331-1(b)(1) makes clear that the subject IRS levy would have attached to any of Stanley's earned but unpaid salary or wages as of March 23, 2007, any salary or wages earned and payable after that date, and any advances on salary or wages after said date. If, as the IRS contends, the monies which Mission gave to Stanley after the date of the levy were indeed advance payments of compensation for services paid in the form of fees, then the levy attached to such funds.

Mission Primary Care Clinic, PLLC v. Director, I.R.S., 2008 WL 2789504 at *6, n. 4 (S.D. Miss. July 17, 2008). The IRS now argues that the post-levy payments made to Stanley, regardless of his status as employee, independent contractor, designee of VPCT, or owner of Mission, constituted advance payment of compensation for

13

medical services rendered, which the Court noted would be subject to the continuing levy under 26 U.S.C. § 6331(e). Specifically, the IRS posits that the Court should focus on the characteristics of the payments made, such as to whom checks were issued and the consideration given for those payments, rather than on the label Mission gives to those payments or on Stanley's role in the organization.

Mission raises three main points in defense of its liability: (1) that any payments Mission made to VPCT or Stanley cannot constitute wages or salary because they are advance payments of VPCT's share of profits as an owner of a professional limited liability company (PLLC); (2) alternatively, that any amounts Mission paid to VPCT or Stanley were loans to VPCT because VPCT had taken excess draws from Mission; and (3) that, because it never owed an obligation to anyone other than VPCT, Mission could not be liable on a Notice of Levy as to Stanley individually.

After clarifying the parties' positions, the Court finds that the dispositive issue is the same now as it was when the Court considered Mission's first motion for summary judgment: Were the payments that Mission made to Stanley after March 23, 2007, 'wages or salary payable to or received by' Stanley? Mission Primary Care Clinic, PLLC v. Director, I.R.S., 2008 WL 2789504 (S.D. Miss. July 17, 2008). If so, then the funds were subject to the continuing levy under § 6331(e) and Mission is liable to the IRS for failing

14

to comply with that levy.

The Court first considers the applicable statutory and regulatory language. The broad language of both Section 6331(e) and its related regulation, 26 C.F.R. § 301.6331-1(b), support the agency's position in this case. First, Section 6331(e) makes a levy continuing as to "salary or wages payable to or received by a taxpayer." As this Court previously noted, "[t]he term 'salary or wages' from § 6331(e) has been construed broadly." Mission Primary Care Clinic, PLLC, 2008 WL 2789504 at *6 (citing Meehan v. Comm'r, 122 T.C. 396, 403 (2004)). Likewise, 26 C.F.R. § 301.6331-1(b)(1) contains quite expansive language, defining salary or wages as including "compensation for services paid in the form of fees, commissions, bonuses, and similar items." (emphasis added). Also, the continuing levy covers an extensive period of time, attaching to "salary or wages earned but not yet paid at the time of the levy, advances on salary or wages made subsequent to the date of the levy, and salary or wages earned and becoming payable subsequent to the date of the levy". 26 C.F.R. § 301.6331-1(b)(1). The use of such expansive language lends support to the IRS's position that the payments made to Stanley fall within Congress' intended reach of a continuing levy.

As for relevant legal precedent, the Court acknowledges that

very little case law addressing § 6331(e) exists.[8]  Of those few

opinions, this Court found the Fourth Circuit Court of Appeals'

decision in Jefferson-Pilot, 49 F.3d at 1020, sufficiently

analogous to the instant case to use in its analysis of Mission's

first motion for summary judgment.[9]  The Court still finds

Jefferson-Pilot useful in deciding whether the payments Mission

made to Stanley after the service of the levy constitute wages or

salary.

To recap, Jefferson-Pilot concluded that payments of

commissions to an independent contractor could constitute salary or

wages that were subject to a continuing levy.  In Jefferson-Pilot,

the court discussed the wide reach of Section 6331(e).  In

concluding that the regular payments of commissions to an

independent contractor constituted "wages or salary" under Section

6331(e), that court noted that "[t]he words 'wages or salary

payable to or received by a taxpayer' are not so specific as to

exclude the possibility that Congress intended the provision to

encompass commissions paid to an independent contractor."

Jefferson-Pilot, 49 F.3d at 1022.  Furthermore, the court reasoned,

---

[8]     Indeed, an electronic search of all federal and state
cases in the United States for cases specifically referencing §
6331(e) yields only twenty-four (24) results, this Court's prior
opinion in this case being one of those results.

[9]     Extensive research reveals that Jefferson-Pilot was the
only case in which a federal Court of Appeals has addressed §
6331(e) in the context currently before this Court.

"[t]he underlying purpose of the provision is to provide a means of levying upon remuneration payable to a taxpayer on a recurring basis for personal services performed for the payor." Id. Additionally, the court noted that its conclusion was supported by Congress' express acknowledgment that the continuing levy was necessary to ease problems that would arise if the IRS could only levy upon money contractually owed a taxpayer. Id. (citing S. Rep. No. 94-938, 94th Cong., 1st Sess. 388-89 (1976)).

The Mission-Stanley relationship is not unlike a circumstance where an independent contractor is paid commissions based on the work he does for a company. By way of example, in an independent contractor situation, Company A might bring in an independent contractor to perform personal services on behalf of Company A for Company A's customers. Company A subsequently collects fees for the services rendered by the independent contractor and disburses to the independent contractor a commission, or a portion of the income gained from his work. So goes the Mission-Stanley relationship. Stanley performed services for his patients under the umbrella of Mission. Mission subsequently collected the fees for those services and distributed to Stanley, either individually or through VPCT, a portion of the income gained from those fees. By recognizing these similarities, the Court is not deciding that Stanley was an independent contractor of Mission, but instead is showing the persuasiveness of the Jefferson-Pilot court's

reasoning, which also supports the IRS's position in this case.

The Court also is guided by two types of cases that are analogous to the instant situation: (1) the case where a taxpayer makes withdrawals from his wholly-owned corporation and attempts to characterize those payments as loans to avoid income tax liability[10] and (2) the case where a corporate taxpayer seeks to characterize distributions to its president or other corporate officers as a salary rather than dividends for the purposes of determining its corporate tax liability[11].  In both of these types of cases, courts look not to the label the corporate or individual taxpayer places on distributions but instead to the characteristics of the transactions.  Indeed, the Fifth Circuit Court of Appeals has noted that "whether a payment is compensation or dividend is a question of fact, [and] the mere labelling [sic] of a payment as a dividend is only evidence of its character."  Bramlette, 424 F.2d at 754. Accordingly, the Court considers the characteristics of the payments made to Stanley in deciding whether they constitute salary or wages.

In determining whether the payments made to Stanley qualify as wages or salary, the Court relies in part on the Fifth Circuit

---

[10]    Tollefsen v. Commissioner of Internal Revenue, 431 F.2d 511 (2d Cir. 1970); Jacques v. Commissioner of Internal Revenue, 935 F.2d 104 (6th Cir. 1991); and Busch v. Commissioner of Internal Revenue, 728 F.2d 945 (7th Cir. 1984).

[11]    Bramlette Building Corp. v. Commissioner of Internal Revenue, 424 F.2d 751 (5th Cir. 1970).

Court of Appeals' reasoning in <u>Bramlette Building Corp. v.</u> <u>Commissioner of Internal Revenue</u>. 424 F.2d at 751. In <u>Bramlette</u>, the court used several criteria to determine whether payments to a shareholder were salary or dividends. The criteria included (1) whether the services performed were more like those performed by an employee or a shareholder; (2) whether there was corporate authorization for the payment of salaries; (3) whether book entries showed periodic payments or lump sum payments; and (4) whether the payments bear a relationship to the earnings of the corporation. <u>Id</u>. Applying these criteria to the instant case, the Court concludes that the payments Mission made to Stanley in fact were wages or salary. First, the services Stanley performed were those of an employee and not a shareholder. Stanley provided services on behalf of Mission that resulted in Mission receiving income. Furthermore, Mission made the payments periodically, rather than in one lump sum, as normally is characteristic of dividends. Finally, the amount Mission paid was not an equal distribution of income, but rather was in direct proportion to the services Stanley rendered. These characteristics all support a conclusion that the payments to Stanley were salary or wages as opposed to some other type of income.

In sum, taking into account the broad language of both Section 6331(e) and 26 C.F.R. § 301.6331-1(b), together with the <u>Jefferson-</u> <u>Pilot</u> reasoning, the similarities between the relationship in this

case and an independent contractor relationship, and the wage-like characteristics of the payments to Stanley, this Court concludes that the periodic distributions of income paid to Stanley were in fact salary or wages subject to the continuing levy.

Mission makes an alternative argument that the payments to Stanley were loans to VPCT rather than wages or salary paid to Stanley. The Court finds this argument to be without merit. Indeed, neither the partnership agreement, Mission's business practices, or the characteristics of the payments supports Mission's position.

First, neither the partnership agreement nor Mission's actual practices supports Mission's characterization of the payments to Stanley as loans. The written partnership agreement entitled all members to take excess draws and only made those excesses payable upon a full membership vote, which never happened in Stanley's case. In fact, neither VPCT nor Stanley was ever ordered to repay the deficit until Fulcher, the firm's business manager, wrote Stanley a letter on April 18, 2008, instructing him to repay the excess draws. Interestingly too, this demand letter was addressed to Stanley individually, not to VPCT, the party whom Mission claims it paid. Additionally, even if the partnership agreement is a defunct document as Mission now contends, it was the practice of Mission to allow Stanley to take advances in excess of Stanley's production, despite VPCT's or Stanley's growing "debt" to the

company.  In a document produced by Mission which the IRS included
in its earlier response to Mission's first motion for summary
judgment, Mission provided a month-by-month breakdown of Stanley's
productivity as compared to the amount advanced to him.  (Gov.'s
Resp. in Opposition to Mission's First Mot. for Summ. J. at ex. 3.)
Indeed, from October 2005 through February 2008, a time span
covering a total of twenty-nine (29) months, Stanley was permitted
to take a draw in excess of his production for fifteen (15) of
those months.

Second, the characteristics of the distributions paid to
Stanley do not indicate that the funds were loans instead of salary
or wages.  There were no written agreements or promissory notes
detailing the terms of the loans.  Nor has Mission indicated that
Stanley or VPCT were ever charged interest on the excess draws.
See Tollefson v. Commissioner of Internal Revenue, 431 F.2d 511 (2d
Cir. 1970) (rejecting the corporation's attempt to categorize
payments to shareholder in a closely-held corporation  as loans
where all indicia pointed to the money being dividends).
Accordingly, since neither the partnership agreement, Mission's
actual practices, nor the characteristics of the payments support
Mission's position, its argument that the monies paid to Stanley
were loans to VPCT rather than salary or wages paid to Stanley is
not well-taken.  Rather, these payments constituted advance payment
of compensation for medical services to be rendered by Stanley, a

category of wages or salary subject to a continuing levy under Section 6331(e).  See 26 C.F.R. § 301.6331-1(b)(1).

Nor is the Court persuaded by Mission's argument that it is not liable because the money it paid to Stanley was payable to him in his capacity as VPCT's designee of its share of Mission's profits, rather than to Stanley in his individual capacity.  First, Mission has not provided any documentary evidence that Stanley was VPCT's authorized designee, nor are any of the checks made payable to Stanley in his capacity as VPCT's designee.  Indeed, the volumes of documentary evidence produced by the parties reveal that on or after March 23, 2007, the date on which the Notice of Levy was served, Mission issued to Stanley checks totaling $43,200.00.  On their faces, these checks appear to be issued to Stanley in his individual capacity, were indorsed by Stanley in his individual capacity and were cashed by Stanley or deposited into Stanley's personal bank account at River Hills Bank in Vicksburg, Mississippi.

Regardless, even if Mission had shown that Stanley received the funds as VPCT's designee, the Court's opinion would be the same.  The facts remain that Mission was served with a Notice of Levy on March 23, 2007.  After receipt of the levy, Mission continued to issue payments to Markus Stanley.  The Court has determined that these payments qualify as advance payment of compensation for medical services to be rendered by Stanley, such

compensation qualifying as wages or salary subject to a continuing levy under § 6331(e). As such, it is immaterial in which capacity Stanley received these post-levy payments. Summary judgment in favor of the IRS is proper as to the issue of Mission's liability for failure to comply with the continuing levy.

### E. Amount of Mission's Liability

As noted above, the IRS now seeks to recover $43,200.00, plus prejudgment and postjudgment interest thereon, from Mission. (IRS's Mot. for Summ. J. at 1, n. 1.) Having concluded that Mission is liable to the IRS for failure to comply with the levy, the Court now considers the amount of Mission's liability. The IRS contends that Mission is liable for $43,200.00, plus prejudgment and postjudgment interest thereon, which equals the total amount of money disbursed to Stanley on or after March 23, 2007. The Court notes, however, that one payment of $2,000.00 was made on March 23, 2007. The record is not clear as to whether this payment was made before or after the Notice of Levy was served on Mission. The IRS is instructed to provide additional briefing to the Court to show that this payment should be included in Mission's total liability.

### IV. CONCLUSION AND ORDER

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that Stanley's and VPCT's Motion to Dismiss [docket entry no. 57] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Mission Primary Care Clinic, PLLC's Motion for Summary Judgment as to the IRS's Counterclaim [docket entry no. 65] is **DENIED**.

**IT IS FURTHER ORDERED** that the IRS's Motion for Summary Judgment as to its Counterclaim [docket entry no. 67] is **GRANTED IN PART**. The motion is granted as to the issue of Mission's liability and ruling is reserved as to the issue of the total amount recoverable by the IRS.

**IT IS FURTHER ORDERED** that the IRS shall address the issue of Mission's liability as to the $2,000.00 payment made to Stanley on March 23, 2007, within ten (10) days from the entry of this Order. Mission shall have five (5) days from the date the IRS's supplemental brief is filed to respond to the same. After receiving the parties' briefs on this issue, the Court will address the amount of Mission's liability to the IRS.

**SO ORDERED**, this the 6th day of March 2009.

s/ David Bramlette

**UNITED STATES DISTRICT JUDGE**
